**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jessie Lee TURNER,
Defendant–Appellant.**

**No. 90–30096.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1990.

Decided Feb. 22, 1991.

David K. Allen, Allen & Allen, Portland, Or., for defendant-appellant.

Michael J. Brown, Sp. Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before WRIGHT, POOLE and THOMPSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Turner appeals the district court's denial of his motions to suppress evidence, to dismiss a superseding indictment and for judgment of acquittal. We affirm.

## BACKGROUND

Police suspected that drug traffickers were working out of a public housing complex. They asked a paid police informant, Sloggett, for information, and he told them that Turner was involved. They set up a series of controlled buys of cocaine base between Sloggett and Turner. Sloggett began to work in Turner's operation. He informed police that Turner kept weapons in the apartment he used for his drug operation. In monitoring Turner's conversations, police heard him say that he had firearms to protect his merchandise and to use against the police if they raided his apartment.

An officer applied by telephone for a warrant to search the apartment. The issuing state judge placed her under oath after she presented the supporting facts. The judge found probable cause and issued the warrant. In their subsequent search, police found ammunition, packaging for weapons, a scale, a police scanner, two-way radios, holsters and packaging typically used in the sale of cocaine base.

On June 13, 1989, a grand jury indicted Turner on two counts of distributing cocaine base and one count of possessing a firearm in committing a drug trafficking crime.

Police obtained a warrant for Turner's arrest. They received information that he was presently in another apartment. They considered it dangerous to alert him to their presence before entry so, while ten officers surrounded the building, a few others tried to enter with a passkey. When it did not work, they forced open the apart-

ment door without knocking or announcing their presence.

They found Turner in bed with a woman. A .45–caliber revolver lay beside him beneath the sheets. The officers handcuffed him and took him into another room. Then they searched the apartment and found a rifle in a bedroom closet, ammunition in Turner's trouser pockets and baggies of cocaine base under his pillow and beneath his jacket.

They advised Turner of his *Miranda* rights. After some equivocation, he acknowledged that he understood them. They questioned him for several minutes.

Turner moved to suppress the statements made at the time of arrest and the evidence seized in both apartments. The court denied the motion.

On October 12, 1989, the government filed a superseding indictment adding one count of conspiring to distribute cocaine base, one count of possessing a firearm in committing a drug trafficking crime and one count of possessing cocaine base with intent to distribute.[1] Turner moved to suppress the superseding indictment. The motion was denied.

Turner moved for judgment of acquittal on the charge of possession of firearms in committing a drug trafficking crime. The court denied this motion. A jury convicted him on all six counts. Now serving a sentence of 198 months imprisonment, he appeals.

## ANALYSIS

### I

■■■ We review de novo the district court's determination that the search warrant was valid when the judge placed the affiant under oath after she had presented the supporting facts. We review de novo the application of existing law to established fact. *United States v. Luk*, 859 F.2d 667, 670 (9th Cir.1988).

■■ Turner argues that the search warrant was invalid because the issuing judge did not place the affiant under oath until after she had recited the facts.

Federal Rule of Criminal Procedure 41(c)(2)(D) provides that when issuing telephonic warrants, a federal magistrate must place an affiant under oath as soon as the magistrate learns that the affiant is seeking a warrant. Noncompliance with this rule results in suppression only when (1) the noncompliance clearly violates the federal constitution, (2) " 'there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or ... [ (3) ] there is evidence of intentional and deliberate disregard of a provision in the Rule.' " *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir.1981) (quoting *United States v. Radlick*, 581 F.2d 225, 228 (9th Cir.1978)). Merely failing to place the affiant under oath until after she had recited the supporting facts did not invalidate the warrant. *See id.*

### II

Turner urges us to suppress the evidence the police obtained when they executed the arrest warrant because the police entered the apartment in violation of the knock-and-announce rule.

■■■ Under 18 U.S.C. § 3109, police officers must knock, announce and be refused entry before they break into a residence. Exigent circumstances excuse noncompliance. *United States v. Ramirez*, 770 F.2d 1458, 1460 (9th Cir.1985). "A police officer's 'reasonable belief that announcement might place him or his associates in physical peril ... constitutes exigent circumstances ...' " *Id.* (quoting *United States v. Manfredi*, 722 F.2d 519, 524 (9th Cir.1983)). Exigent circumstances also include fear for the safety of bystanders. *United States v. Spinelli*, 848 F.2d 26, 28 (2nd Cir.1988).

1. The parties disagree about the reason why the superseding indictment was delayed. Turner states that the government was slow because the prosecutor was considering the advisability of a conspiracy charge. The government states that it delayed because it was waiting until after the district court decided Turner's motion to suppress.

We review de novo a finding of exigent circumstances. *United States v. Ramirez*, 770 F.2d 1458, 1460 (9th Cir.1985).

The government argues that the officers here reasonably believed that they and the apartment's occupants were in danger from Turner. They based this on several facts. Turner had previously expressed his willingness to use firearms against the police. He was known to have access to firearms. Police had not recovered the guns that Sloggett said Turner had when they searched the first apartment.

Turner argues that the police did not have a reasonable belief that they or others were in danger. His only prior conviction was in 1972 for receiving stolen property. He had never been charged with either escape or resisting arrest. Police had no reason to believe he was aware that they had a warrant for his arrest. Ten officers surrounded the apartment building, and the police had no information specifically indicating that Turner currently had weapons in his possession.

Turner's argument fails. The number of officers surrounding the building and Turner's lack of prior charges for escape are irrelevant in determining whether the officers reasonably feared for their safety. They may not have had specific information that Turner currently had weapons, but the facts they did have made this highly likely. They heard him say that he kept a firearm to use against police.

Considering all of these circumstances, we conclude that the arresting officers reasonably believed that they and apartment occupants would be endangered if the officers knocked and announced their presence. Exigent circumstances justified their no-knock entry.

### III

Turner argues that the seizures of a baggie of cocaine base from behind his pillow, another from under his jacket, which was on the bed, and a rifle from a bedroom closet were unlawful. The government argues that police lawfully seized this evidence when they conducted a search incident to the arrest. We first consider the seizures of the baggies of cocaine base, and then we address the rifle's seizure.

In the context of plain view discoveries and searches incident to arrest, we review de novo the application of established facts to legal standards. *United States v. Miller*, 769 F.2d 554, 556 (9th Cir.1985).

### A

When making a lawful arrest, police may conduct a warrantless search of the area within the arrestee's immediate control, that is, "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). Such a search incident to arrest must be conducted at "about the same time as the arrest." *United States v. Andersson*, 813 F.2d 1450, 1456 (9th Cir.1987) (court permitted a search incident to arrest in a hotel room to encompass the whole room and a closed suitcase).

The facts before us raise a novel question. Before the search, police handcuffed Turner and took him to another room. We have not previously determined whether searches incident to arrest may ever encompass a room from which the arrestee has been removed.

The reasoning of the Seventh Circuit is helpful. In *United States v. Fleming*, 677 F.2d 602, 607 (7th Cir.1982), that court held that a search incident to arrest was valid even though it was conducted five minutes after the arrest, while the arrestee was handcuffed.

To reach this result, the court used a two-level inquiry. First, it put itself in the officers' position and determined whether the searched bag was within the arrestee's immediate control *when he was arrested.* The answer was yes. Next, it considered whether events occurring after the arrest but before the search made the search unreasonable. It determined that the officers acted reasonably and out of a concern for

their safety when they delayed the search five minutes and first handcuffed the arrestee. The court reasoned that "it does not make sense to prescribe a constitutional test that is entirely at odds with safe and sensible police procedures." *Id.*

We adopt the Seventh Circuit's approach. First, we consider whether the baggies of cocaine base were within Turner's immediate control when he was arrested. They were. He was on the bed with the baggies when he was arrested.

Next we consider whether subsequent events made the search unreasonable. The officers handcuffed Turner and took him into the next room out of a concern for safety. We cannot say that these concerns were unfounded, for they had already discovered a concealed weapon beneath the bedding. They did not take him far away or delay for long before conducting the search. Under the circumstances, we cannot find the search that revealed the baggies of cocaine inconsistent with *Chimel* or *Andersson.*[2] The baggies were validly seized during a search incident to arrest.

### B

■ We need not determine whether the officers, in seizing the rifle from the bedroom closet, exceeded the scope of a valid search incident to arrest. Even if the rifle's seizure was not valid, admitting this evidence was harmless error. The prosecution offered the rifle as evidence of the first count, possessing firearms in relation to a drug trafficking crime. The jury could have convicted Turner on this count without the rifle because his conviction was supported by evidence involving four other firearms. He was sentenced under 18 U.S.C. § 924(c), which requires that the defendant possess only one firearm. Suppression of the rifle would not have changed the outcome of the firearms count. *See* VI *infra.*

2. This holding is limited to the narrow facts of a short time span and the arrestee's close

### IV

Turner urges us to suppress the statements made to police when arrested. He argues first that they were involuntary because he had just awakened when the police questioned him.

■ We review de novo a district court's determination that a statement was voluntary. *United States v. Lewis,* 833 F.2d 1380, 1384 (9th Cir.1987).

■ Statements are involuntary if "under the totality of circumstances, the government obtained the confession by coercion or improper inducement." *United States v. Pinion,* 800 F.2d 976, 980 (9th Cir.1986), *cert. denied,* 480 U.S. 936, 107 S.Ct. 1580, 94 L.Ed.2d 770 (1987). A defendant's mental state alone does not make a statement involuntary. *Colorado v. Connelly,* 479 U.S. 157, 169–71, 107 S.Ct. 515, 522–24, 93 L.Ed.2d 473 (1986). Turner's statements were not involuntary solely because he had just awakened. Coercive conduct by police must have caused him to make the statements. Merely awakening a suspect to arrest him is not coercive conduct.

■ Turner also argues that his statements were involuntary because he made no written acknowledgment of his *Miranda* rights. This argument fails because *Miranda* does not require that defendants acknowledge their rights in writing.

### V

■ We review for abuse of discretion a district court's failure to dismiss a superseding indictment. *United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 737, 739 (9th Cir.1989). A court is not required to dismiss a delayed indictment absent a constitutional violation. *United States v. Saavedra,* 684 F.2d 1293, 1297 (9th Cir. 1982). Turner argues that two rights were violated by the delayed indictment: (1) his right to a speedy trial and (2) his due process rights.

proximity.

## A

The grand jury initially indicted Turner on June 13, 1989. He was arrested on June 16, and the government filed a superseding indictment on October 12.

 To determine whether the government has violated a defendant's right to a speedy trial, we weigh the length of the delay, the reasons for it, the defendant's timeliness and manner of asserting this right, and whether the defendant has suffered cognizable prejudice. *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986). Recognized prejudices are oppressive pretrial punishment, protracted anxiety and impairment of defense. *Id.* at 1417–18. No single factor is either necessary or sufficient to establish a violation. *United States v. Solomon*, 753 F.2d 1522, 1526 (9th Cir.1985).

 The delay here did not violate the Sixth Amendment. The first and fourth factors support a rejection of Turner's argument. First, the superseding indictment against Turner was delayed for only four months. This is insufficient for a Sixth Amendment violation. *See Valentine*, 783 F.2d at 1417 (a six-month delay is a borderline case).

 To show prejudice, the fourth factor, Turner argues that the additional charges in the superseding indictment caused the imposition of a longer sentence. This is not the sort of prejudice we recognize as a Sixth Amendment violation.

The second and third factors are inconclusive. The parties disagree as to the second factor, the reasons for the government's delay. Even if Turner is correct that the government did not have a legitimate reason for the delay, this does not establish a Sixth Amendment violation given the other factors.

 As for the third factor, Turner sought to dismiss the superseding indictment by a pretrial motion. His assertion was timely and made properly. But while an improper or untimely assertion of speedy trial rights may weigh in favor of rejecting a defendant's motion to dismiss

for violation of these rights, the mere fact of proper, timely assertion does not warrant dismissal.

## B

 Turner also argues that the delayed superseding indictment violated his right to due process. We reject this argument.

Preindictment delay by a prosecutor violates due process when it causes the defendant actual prejudice and when the "length of the delay, when balanced against the government's reasons for it, offends those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Valentine*, 783 F.2d at 1416 (quoting *United States v. Moran*, 759 F.2d 777, 782 (9th Cir.1985)).

Turner argues that he was prejudiced because he received five years of punishment that he would not have received if the government had not filed the later indictment. The delay, however, did not cause this "prejudice." From the time of Turner's arrest, the government had the information needed to file the additional charges.

The four-month delay also weighs against Turner. While we favor prompter action, we do not find that this delay between the arrest and superseding indictment violated any fundamental notions of justice.

## VI

We review denial of a motion for judgment of acquittal by determining whether "viewing the evidence in the light most favorable to the Government, there was substantial relevant evidence produced from which the jury reasonably could have found the defendant guilty beyond a reasonable doubt." *United States v. Sarault*, 840 F.2d 1479, 1487 (9th Cir.1988).

 Viewing the evidence by this standard, a reasonable jury could have found that Turner possessed the firearm in committing a drug trafficking crime. A defendant commits this crime if he uses or carries a firearm during and in relation to a

drug trafficking crime. 18 U.S.C. § 924(c) (Supp.1990).

The jury could reasonably have found that Turner was involved in drug trafficking. The police found 4.1 grams of cocaine base in individual baggies when they arrested him. Testimony indicated that 4.1 grams was not a typical amount for personal use and that drug traffickers normally distributed cocaine in small baggies.

Further, the jury could reasonably have found that Turner had the firearms during and in relation to drug trafficking. The police overheard a conversation in which Turner said he kept firearms to protect his "merchandise."

Taken together, this evidence reasonably supports the conclusion that Turner possessed a firearm in committing a drug trafficking crime.

### VII

The district court properly denied Turner's motions to suppress evidence, to dismiss the superseding indictment and for judgment of acquittal.

AFFIRMED.